

# THE BLANCH LAW FIRM, P.C.

261 MADISON AVENUE, 12TH FLOOR  NEW YORK, NY  10016  T (212) 736-3900 F (212) 736-3910

April 14, 2012

ATTN: Hon P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007


Re: United States v. Jose Delos Santos; 11-CR-412


Your Honor:

On January 17, 2012, Jose Delos Santos plead guilty to violating 18 U.S.C. § 841(b) (1) (B), possession with the intent to distribute at least 100 grams but not more than 400 grams of heroin. He is scheduled to be sentenced by this Court on May 18, 2012. I write now to provide your Honor with information that is relevant to your sentencing decision.

## STATEMENT OF THE DEFENDANT'S HISTORY

1. Jose Delos Santos (hereafter Mr. Delos Santos) was born on September 24, 1977, in San Cristobal, Dominican Republic from the union of Jose Arismendy Delos Santos and Altgracia Nova. At age 12 Mr. Delos Santos' mother and father separated, which resulted in Mr. Delos Santos remaining in Cristobal with his father while his siblings went to Bani, Dominican Republic with his mother who

ultimately moved to the United States  seeking a "better life."  Finally, at age 17 Mr. Delos Santos joined his mother and brothers in the United States where he become a naturalized citizen on February 15, 2002, **see Probation Report at 33-37.**

2. According to Mr. Delo Santos' mother, "her son is a good person, family oriented and hardworking, she wants the best for her son but will leave it up to God," **Probation Report at 38.**  As advised by the United States Department of Probation, Jose Delos Santos "did not learn criminal behavior from his or father."  Unfortunately, upon his move to the United States and attempt at cultural assimilation, Mr. Delos Santos became depressed and developed an alcohol and drug addiction, **Probation Report at 37 and 46-48.**  In a text book case of marijuana as a gateway drug, Mr. Delos Santos' marijuana use turned into cocaine use and what ultimately became an addiction which resulted in Mr. Delos Santos' first arrest for cocaine possession, **Probation Report at 28 and 48.** [1]

---

[1] The United States Department of Probation has categorized Mr. Delos Santos' 2002 conviction as involving "a large amount of Cocaine and Marijuana."  The arrest did not involve any Marijuana, but a few ounces of cocaine were found as our firm notified Probation Officer Wilson via email on April 20, 2012, with no rebuttal.

3. After his 6 months of incarceration in the New York State
   Department of Correction's Shock Program.  Mr. Delos Santos
   did not return to Bronx Community College where his
   "scholastic standing was poor," **Probation Report at 52,**
   instead he began working off the books for his Uncles
   seafood supply operation, Nova Seafood, until 2011 when he
   found better paying employment as an electrical technician
   with Polambell Electrical, **Probation Report at 54-55.**

4. As noted by the United States Department of Probation,
   Mr. Delos Santos has been able to maintain long term
   employment, a long term relationship with Nancy Pena, the
   mother of his two children, Brandon Delos Santos age 5
   and Angel Delos Santos, age 1.  Mr. Delos Santos'
   weakness has been his addiction to drugs, a desire and
   need to maintain his household when Ms. Pena became
   unemployed and was receiving Public Assistance, coupled
   with his strong desire to help others as noted in the
   letters submitted on Mr. Delos Santos' behalf **see
   Defendant's Exhibits A – H.**

5. In helping others, as noted in the Probation Report, Mr.
   Delos Santos did meet with Nick "Indio" Cruz, Mr. Delos
   Santos' niece and nephew's sub-tenant, on January 19,
   2011 and received $500.00 cash for the purchase of heroin

and again on January 24, 2012 in order to give "Indio"
the heroin.  Mr. Cruz was also considered an extend
family member of the Delos Santos family, not only
because of his residence with Mr. Delos Santos' niece and
nephew, but also because of his past relations and
dealings with Mr. Delos Santos' brother, Victor Delos
Santos, **Probation Report at 34.**

6. It was because of Cruz's close relationship with the
Delos Santos family and his prior dealings with Victor
Delos Santos, that the defendant felt compelled to assist
Mr. Cruz by obtaining heroin for him, which Mr. Delos
Santos had no prior affiliation or ties with, in order to
"help Cruz out of a tight jam."  For his role in the
offense, Mr. Delos Santos was expected to make $200.00.


7. However, as this Court is aware, Mr. Delos Santos did not
receive the total amount of funds required to complete
the transaction, and the "tight jam" that he was
unknowingly helping Mr. Cruz out of was not a financial
problem or an issue related to a drug debt, but helping
Cruz get a 5k.1 recommendation from the government based
upon Cruz's arrests for a matter completely unrelated to
Mr. Delos Santos or any member of his family.

8. Mr. Delos Santos clearly accepts responsibility for his role in the instant offense and acknowledges that it was wrong.   Mr. Delos Santos' sole reason for engaging in the instant offense was his desire to help an individual who had long term ties to the Delos Santos family.   Upon learning the true nature of Cruz's "troubles" and being arrested for his role in the instant offense, Mr. Delos Santos was advised by his prior attorney, Sam Gregory, to speak with the government with consideration being given to entering into a cooperation agreement.   As Mr. Delos Santos understood it, without entering into a cooperation agreement with the government, the government did not owe him any leniency, favors, and had made no commitments to any favorable treatment of Mr. Delos Santos and for his part, he had no obligations to the government and could decide to cooperate or not, without any adverse consequences.

9. In light of Mr. Delos Santos having been arrested based upon a "friend" seeking him out for assistance with obtaining drugs that he had no previous dealings, in order to allegedly overcome a "tight situation."   In turn, Mr. Delos Santos himself reached out to an associate of his whom he had no prior criminal dealings seeking a "favor" in efforts to provide his friend

"Indio" with the type and quantity of drugs needed. Once Mr. Delos Santos was arrested as a part of "Indio's" plight to obtain a 5k.1 recommendation, coupled with the advice of prior counsel Sam Gregory, Mr. Delos Santos who never denied his role in the instance offense, but has a strong sense of loyalty, as noted in the attached letters, was torn by his desire to do what's right and his feelings of guilt due to the fact that someone who owed him nothing, but did him a "favor" so that he could help "Indio," would possibly be arrested for this as well.

10.  As noted in the Probation Report,  based upon a stipulation entered into between the government and the defense, at some point between February, 2011 and the first week of March, 2011 Mr. Delos Santos "encouraged his heroin supplier to flee," **Probation Report at 13**. However, between the second week of March and March 23, 2011, Mr. Delos Santos participated in meetings with current counsel and the government in efforts to be open, honest, make amends for his conduct and cooperate with the government in any ways possible.  On March 24, 2011 Mr. Delos Santos' heroin supplier was arrested, **see Defendant's Exhibit I.**

8. Despite his own arrest(s), Mr. Delos Santos is overall
   described as being a "good person and family oriented"
   among other things, **Probation Report at 38 and 40, also
   Defendant's Exhibits A - H.** It is his strong commitment
   to his two young sons and his family that motivated Mr.
   Delos Santos to ultimately ignore any prior feelings of
   guilt and commitment to others and focus on matters that
   was best for him and his family's interest.

9. Concluding this chapter of his life, Mr. Delos Santos has
   shown extraordinary acceptance of responsibility, and has
   repeatedly expressed regret for his bad decisions and the
   impact that it has had on his family, the mother of his
   children, and his two young sons. As shown by the
   Probation Report and the attached letters, Mr. Delos
   Santos had made strides in his rehabilitative efforts and
   has come to accept that his addictions and strong sense
   of loyalty to others can be detrimental to those whom are
   most important in his life, himself and his family. The
   instant offense is not indicative of Mr. Delos Santos'
   character or who he aspires to become in the future as is
   proven by the letters attesting to his character as
   "warm, caring, considerate and helpful," despite his

short comings and mis-steps in life, **Defendant's Exhibits A – H.**

9. <u>**SENTENCING FACTORS**</u>

   **A. Sentencing Issues**

     <u>Guideline Calculation</u>

While the court is no longer required to impose a sentence within the Guidelines, Federal Appellate Courts have held that District Courts must "consider" the Guidelines. In "order to fulfill this statutory duty to 'consider' the Guidelines a sentencing judge will normally have to determine the applicable Guideline range." <u>US v. Crosby</u>, 397 F.3d at 111. Thus, to decide what sentence is appropriate for Mr. Delos Santos, the Court must first calculate the Guideline range for his offense.

Because the offense of conviction involves Conspiracy to Distribute and Possess with Intent to Distribute 100 grams but less than 400 grams of Heroin, U.S.S.G. section 2D1.1(c)(7)applies.

In determining the appropriate base offense level, the Sentencing Court is required to calculate the defendant's 'relevant conduct' under guidelines 2B1.1 (a) and (1) (b). The scope of the criminal activity jointly undertaken by a defendant is not necessarily the same as the scope of the

entire conspiracy and hence relevant conduct is not necessarily the same for every participant. This has been interpreted to require the Sentencing Court to make two particularized findings; (a) That the acts were within the scope of the defendant's agreement, and (b) That they were foreseeable to the defendant. See e.g., US v. Hernandez-Santiago, 92 F.3d 97 (2d Cir.1996); US v. Studley, 47 F.3d 569 (2d Cir.1995).

In the instant case, Mr. Delos Santos was asked to assist a longtime family friend, Nick "Indio" Cruz, in a "tight situation" by obtaining a quantity of heroin for Cruz. Mr. Delos Santos admittedly sought out a source of heroin for Cruz and then delivered the requested quantity of heroin to Cruz. The instance offense was of limited duration and scope and Mr. Delos Santos had made an agreement to obtain Heroin for Cruz on a one time basis.

**B. Offense Level Computation and 18 U.S.C. § 3553(a) Factors**

Although the imposition of a sentence in accordance with the United States Sentencing Guidelines is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guideline provisions as well as other factors enumerated in 18 U.S.C. §3553(a) to arrive at an appropriate sentence in the instant case.

Section 3553(a) requires that this Court consider the purposes of sentencing, including punishment, promotion of public safety and deterrence. Under these standards, the court may impose a non-guideline sentence in appropriate circumstances.

In this case, Mr. Delos Santos does not dispute the offense level of 28. But wishes to persuade the Court that by no means was the defendant personally engaged in criminal activity beyond the scope of his decision to help his friend Cruz out of a "tight situation," on a one time basis.

10.  **Departures Based upon Character, History, and Circumstances Faced by the specific Defendant**

Mr. Delos Santos should be eligible for departures based upon **A)** The defendant proffered with the government and fully appraised them of all information that he possessed in relations to the offense and his role in it, and **B)** the defendant's incarceration will have a destructive effect on his infant child and his new wife who will be forced to rely upon family and/or public assistance to provide for the child.

**Defendant's Attempt to Cooperate with Authorities warrants a Downward Departure**

Mr. Delos Santos willfully provided the government with all information requested and within the scope of his knowledge in efforts to dissolve the conspiracy and correct the wrongs that he had committed. In light of his limited role and knowledge, Mr. Delos Santos was only able to provide the government with limited information.

At the same time, Mr. Delos Santos has received a 2 point sentencing enhancement for Obstruction of Justice pursuant to USSG § 3C1.1 and was denied 2 points for Acceptance of Responsibility pursuant to USSG § 3E1.1.   As this Court is aware USSG § 3E1.1(4) holds that:

> **(4)** Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

In Mr. Delos Santos' case, as detailed in the **Defendant's Exhibit I,** Mr. Delos Santos found himself in an emotionally charged dilemma which found him speaking on his arrest and encouraging the supplier to flee.  However, upon retaining new counsel and obtaining an understanding of the dynamics of the Federal Prosecutorial System, Mr. Delos Santos gave an open and honest accounting of the facts and

circumstances surrounding his role in the offense.  Mr.
Delos Santos also went as far as curing any conduct that
would constitute an Obstruction of Justice, and finally
plead guilty because he is in fact guilty.

In assessing honest and full attempts to provide the
government with information relative to a defendants
criminal conduct and authorizing a downward departure for
these efforts, the Second Circuit Court of Appeals
recognized in U.S. v. Tenzer, 213 F.3d 34,(2d Cir. 2000),
that " it is in a Courts discretion to depart where the
defendant tried to cooperate with the authorities and was
unsuccessful and eventually prosecuted," see also U.S. v.
Kaye, 140 F.3d 86 (2nd Cir. 1998)(Defendant's request for
downward departure based upon cooperation or assistance to
authorities  which does not involve the prosecution or
investigation of others is not precluded solely because the
government has not made U.S.S.G. 5K.1.1 motion, since
U.S.S.G. 5K.1.1 is applicable to the circumstances).

In this case, Mr. Delos Santos' knowledge was limited and
participation in the conspiracy short lived.  As previously
noted, Mr. Delos Santos did not engage in the charged
conduct based upon his desire to be a "drug dealer."  The
defendant has no history of dealing or possessing heroin
and only stood to make $200.00 for being the middle man

between his nephew's sub-tenant and family friend Indio
Cruz and the supplier, on a one time basis, U.S. v.
Carbonell, 737 F.Supp. 186 (E.D.N.Y. 1990)(In cocaine case
where Hispanic defendant sought to help out new immigrant,
departure downward from 41 to 12 months is warranted
because of the defendant's personal characteristics as
explained by sociological phenomenon that in the
cohesiveness of first generation immigrant communities in
the United States engenders loyalty, responsibility and
obligation to others in the community even if they are
strangers).   The two point enhancement for Obstruction of
Justice that occurred prior to Mr. Delos Santos' successful
proffers with our firm does not prevent this Court from
downwardly departing as an acknowledgment and reward for
his honest efforts to contribute to the investigation,
review and resolution of the instant offense. At the least,
a sentence below the guidelines should be imposed pursuant
to 18 U.S.C. 3553.

**<u>The destructive impact of the defendant's incarceration upon his on his two young sons and the mother of his children who will be forced to rely upon public assistance to provide for the needs of Mr. Delos Santos' children warrant a downward departure.</u>**

To Mr. Delos Santos, who lives a simple life and does not own any vehicles, stocks, bonds, or material items of any substance, the $200.00 offered to Mr. Delos Santos at the particular stage in his life would have assisted him with meeting the needs of his children whose mother was unemployed and receiving public assistance, **Probation Report at 40.** Even more important than the $200.00 that he would've received, Mr. Delos Santos believed that his was helping a friend, Indio Cruz, out of a bind that could've easily found him in the hospital or dead. Mr. Delos Santos' participation in the instance offense was not based upon greed.

In assessing permissible justifications for downward departures, The Second Circuit Court of Appeals recognized in <u>U.S. v. Milikowsky,</u> 65 F.3d 4, at 8 (2d Cir. 1995) that, "a permissible justification for downward departure is the need.. To reduce the destructive effects that incarceration of a defendant may have on innocent third parties."

As detailed by the United States Department of
Probation, since age 19 Mr. Delos Santos consistently
worked to earn funds for himself.  Unfortunately, Mr. Delos
Santos also obtained a drug addiction as part of his
cultural assimilation into the United States.  Mr. Delos
Santos does not deny having made bad decisions in his life
and struggling to change.  But among all of his
shortcomings, Mr. Delos Santos has been a consistent figure
of support and guidance for his two young sons.

Contrary to the United States Department of
Probation's calculations that Mr. Delos Santos and Ms. Pena
together have:

a) TOTAL LIVING EXPENSE OF $1,339.00 Per Month

b) TOTAL NET MONTHLY CASEH FLOW OF $ 3,861.00 Per Month,
   **Probation Report at 59** [2].

   Mr. Delos Santos and Ms. Pena's:

c) TOTAL MONTHLY LIVING EXPENSES ARE: $3,159.00

d) TOTAL MONTHLY NET MONTHLY CASH FLOW IS: $2,041.00

As detailed by the United States Department of
Probation,  Ms. Pena's salary alone will only cover
the household's Rent, Food and Daycare, leaving the
home without funds for utilities, clothing, and money

---

[2] The United States Department of Probation was notified of this error in calculating the above listed amounts via email dated April 20, 2012. No Response was issued.

for transportation to and from work and the daily
travel required to pick up the children from day care,
**Probation Report at 59**

As noted by the United States Department of Probation,
Ms. Pena, is "concerned about the children and being able
to care and provide for them by herself," **Probation Report
at 41.** Those fears are not unfounded based upon the
financial information provided by the Department of
Probation. An extended incarceration of Jose Delos Santos
Abad for the instant offense will require public assistance
during the defendant's incarceration, U.S. v. Mateo, 299
F.Supp.2d 201 (S.D.N.Y. 2004)(among the permissible
justifications for downward departure… is the need, given
appropriate circumstances, to reduce the destructive
effects that incarceration of a defendant may have on
innocent third parties).

Finally, as noted by Nancy Pena the oldest child
Brandon will be told that Mr. Delos Santos is away at
college due to the child's emotional state, **Probation
Report at 41.**

In light of this reality and it being clear from
the evidence presented in the United States Probation
Report and the attached letters, that Mr. Delos Santos has
been able for the first time since arriving into the United

States to overcome his drug addiction, while maintaining employment and providing for his family, it is likely that his criminal behavior will not be repeated and he fully regrets his short sighted decisions. Mr. Delos Santos should qualify for an offense level reduction, or at least a sentence below the guidelines pursuant to 18 U.S.C.3553.

Accordingly, Mr. Delos Santos should be eligible for downward departures due to circumstances listed above.

11.  **The Need for the Sentenced Imposed**

(A)  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Mr. Delos Santos accepts responsibility and understands that he was involved in this conspiracy and engaged in criminal conduct. He has pleaded guilty because he is guilty, ashamed, and remorseful and accepts the punishment of this Court. However, when construing just punishment, this Court should consider Mr. Delos Santos' formative history as it relates to his role in the offense. The Court should also consider Mr. Delos Santos' character, his sincere regret for his role in the instant offense, humiliation, as well as the fact that he now faces his worst fear, incarceration and an inability to ensure that the basic needs of his family, especially his two children

are met, his extensive work history, and his minimal
financial gain from the crime, and most importantly his
ability and motivation based upon this arrest to overcome
his drug addiction that has existed since his arrival into
the United States, **Probation Report at 45-51.**

     (B)  To afford adequate deterrence to criminal
           conduct.
The pending incapacitation will be sufficient to deter
any further criminal behavior.

     (C)  To protect the public from further crimes of the
           defendant.

    All of the indicators of Mr. Delos Santos' life
suggest that he will never again commit an offense against
this government. Mr. Delos Santos does not have any
violence in his history.  He made a terrible mistake, has
acknowledged this mistake and continues to suffer
tremendous remorse and humiliation as a consequence of his
conduct. In addition, Mr. Delos Santos who is now a father
of two young sons has been forced to confront the damages
caused by his bad decisions.  These facts in and of
themselves have provided a moment of not only deep concern,
but clarity for Mr. Delos Santos.


     (D)  To provide the defendant with needed educational
           or vocational training, medical care, or other
           correctional treatment in the most effective
           manner.

Mr. Delos Santos would not benefit from incarceration in order to provide him with educational or vocational training. Mr. Delos Santos has been continuously employed prior to his arrest as well as after and has the tools and education to obtain employment in order to sustain him.  As noted, Mr. Delos Santos has attended college previously, learned that his talents are in vocational trades and maintained employment as an Electrician.  Mr. Delos Santos' time of financial challenge, drug addiction, and loyalty to "friends" while endangering himself and his children has passed, which caused panic regarding his ability to provide for his household and Mr. Cruz's needs and resulted in his bad decision was at the point of his where he had less clarity.  Mr. Delos Santos now clearly understands that short sighted decisions made in panic can have a broad and damaging impact not only on his family, but far beyond the scope of his imagination. Mr. Delos Santos is sincerely taken back upon learning that a possible gain of $200 maximum on his part and helping a friend out of a "tight spot" that did not exist in reality, would or could subject him to an extensive prison term.  With the eye opening experience of the arrest, cooperation against him by the person who was the primary reason for his engaging in the conduct at issue, realizing the impact of the short sighted

decision and fearing the impact that it will now have on his family.  Mr. Delos Santos has the tools to succeed in life if given an opportunity with a productive foundation.

## ABILITY TO MAKE RESTITUTION INACCUARTE IN PRE-SENTENCE REPORT

Mr. Delos Santos does not have the ability to make restitution if incarcerated.  As previously noted, without income from Mr. Delos Santo's employment the household would not have sufficient means to cover the basic necessitates, **Probation Report at 59**.

### CONCLUSION

Mr. Delos Santos respectfully requests that the Court, when constructing its sentence, consider his family circumstances,  overall history and character, post arrest rehabilitation and that he be sentenced below the stipulated guidelines range with the above presented mitigating factors considered for offense level reduction to allow him to support his family and begin making restitution immediately, U.S. v. Williams, 65 f.3d 201 (2d Cir. 1995)(we wish to emphasize that the Sentencing Guidelines do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process.. In areas where Sentencing

Commission has not spoken. District courts should not hesitate to use their discretion in devising sentences that provide individualized justice).

Defendant respectfully reserves the right to raise additional issues, if necessary, at the time of sentencing.


Respectfully Submitted,

*Edward J. McQuat*
Edward James McQuat, Esq.
Counsel for Mr. Delos Santos